UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**ROBERT PAUL TAYLOR**                   **CIVIL ACTION**

**VERSUS**                                  **NO. 14-1972-DEK**

**NEW ORLEANS POLICE DEPARTMENT –
SEVENTH DISTRICT TASK FORCE, ET AL.**

## ORDER AND REASONS

Plaintiff, Robert Paul Taylor, a state prisoner, filed this *pro se* federal civil rights complaint pursuant to 42 U.S.C. § 1983. He sued the New Orleans Police Department - Seventh District Task Force, Sergeant Michael A. Stalbert, Leslie Guzman, Patrice Swan, Detective T. Perez, and other unidentified individuals. In this lawsuit, plaintiff claims that excessive force was used to effect his arrest for stealing a vehicle.

On March 18, 2015, plaintiff's claim against the New Orleans Police Department - Seventh District Task Force was dismissed with prejudice.[1]

The remaining defendants have now filed a "Motion to Dismiss and Motion for Summary Judgment."[2] Plaintiff filed responses opposing that motion,[3] the defendants filed a reply to those responses,[4] and plaintiff filed sur-replies.[5]

## I.  Motion to Dismiss

The defendants first move for dismissal of plaintiff's claims as "frivolous" pursuant to this Court's statutory screening authority. For the following reasons, that motion is **DENIED**.

---

[1] Rec. Doc. 36.
[2] Rec. Doc. 64.
[3] Rec. Docs. 77, 78, 79, 80, and 81.
[4] Rec. Doc. 84.
[5] Rec. Docs. 85 and 86.

Federal law mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a).  Regarding such lawsuits, federal law further requires:  "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint … is frivolous …." 28 U.S.C. § 1915A(b)(1).  Additionally, with respect to actions filed *in forma pauperis*, such as the instant lawsuit, federal law similarly provides: "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action … is frivolous …." 28 U.S.C. § 1915(e)(2)(B).

As an initial matter, the mandated screening is a function that the Court must perform *sua sponte,* and it is at least questionable whether it is appropriate for the defendants to move for dismissal under the cited statutes.  See Vo v. St. Charles Parish, Civ. Action No. 10-4624, 2011 WL 743466, at *1 (E.D. La. Feb. 3, 2011) ("[T]he Court cautions counsel that 28 § 1915(e)(2)(B) does not create a right by a party to request that the Court fulfill its statutory duty."), adopted, 2011 WL 740909 (E.D. La. Feb. 22, 2011).  Nevertheless, even if the Court assumes for the purposes of this decision that such a motion is appropriate, plaintiff's complaint cannot properly be dismissed as "frivolous."

A complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  Here, defendants argue that plaintiff is mentally ill and that his allegations stem from his delusions.  It is true that complaints which are clearly based on delusions

2

are subject to being dismissed as frivolous. However, as the United States Supreme Court has explained:

> [A] court may dismiss a claim as factually frivolous only if the facts alleged are "clearly baseless," a category encompassing allegations that are "fanciful," "fantastic," and "delusional." As those words suggest, a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them. An *in forma pauperis* complaint may not be dismissed, however, simply because the court finds the plaintiff's allegations unlikely. Some improbable allegations might properly be disposed of on summary judgment, but to dismiss them as frivolous without any factual development is to disregard the age-old insight that many allegations might be "strange, but true; for truth is always strange, Stranger than fiction." Lord Byron, Don Juan, canto XIV, stanza 101 (T. Steffan, E. Steffan & W. Pratt eds. 1977).

Denton v. Hernandez, 504 U.S. 25, 32-33 (1992).

In the instant case, plaintiff alleges that he was savagely assaulted by police officers during an arrest. Unfortunately, as any casual viewer of the news is aware, such incidents do in fact occur on occasion. Therefore, the allegations are not *inherently* fanciful, fantastic, or delusional.[6]

It is true that plaintiff's version of the events differs starkly from the versions related by the defendants and their witnesses. For example, plaintiff alleges that he was sitting calmly in the stolen vehicle with his hands over his eyes when he was apprehended. Officers then shattered a vehicle window, opened the door, entered the vehicle, and began beating him. They then threw him from the vehicle, continued beating him, twisted his left arm which was in a cast as a result of

---

[6] Plaintiff's allegations are, for example, obviously different in kind from the ones that are normally considered delusional, such as: an allegation that the federal government was using satellites to beam a genetic code to infect the plaintiff with a virus, Flores v. United States Attorney General, 434 Fed. App'x 387 (5th Cir. 2011); an allegation that the plaintiff was "being harmed by electroconvulsive treatments, laser rays, and other forms of radiation through computer monitoring as part of the Gang Renouncement and Disassociation (GRAD) Process," Delgadillo v. Texas Violent Gang Task Force, 134 Fed. App'x 741 (5th Cir. 2005); or an allegation that the plaintiff was being "exploited by 'wealthy persons' from Europe and Asia who have sought to 'clone [his] spiritual persona' and 'remov[e] [his] Reproductive Fluids," Johnson v. Drug Enforcement Agency, 137 Fed. App'x 680 (5th Cir. 2005).

a prior break, and handcuffed him.[7] On the other hand, the defendants and their witnesses state that no windows were broken on the vehicle, plaintiff exited the vehicle and surrendered without incident, and there was no physical altercation whatsoever between plaintiff and any officer.[8] However, those disparities do not inexorably lead to the conclusion that plaintiff's allegations are delusional, because it is always possible, as it is in any case, that the version of events offered by defendants and their witnesses is untrue.

Therefore, although the Court has been presented with materially different versions of what actually occurred on the night in question, neither version is inherently implausible. Where, as here, factfinding is required to resolve such disputes, dismissal of a *pro se* plaintiff's complaint as "frivolous" is inappropriate. See Denton, 504 U.S. at 32.[9]

## II. Motion for Summary Judgment

Defendants have alternatively moved for summary judgment. For the following reasons, that motion is likewise **DENIED**.

In reviewing a motion for summary judgment, the Court may grant the motion when no genuine issue of material fact exists, and the mover is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). However, as already explained, the material issues of fact as to what actually occurred on the night in question are vigorously disputed by the parties in the instant case. The

---

[7] Rec. Doc. 64-4, pp. 48-68.
[8] Rec. Docs. 64-5, 64-6, 64-7, and 84-1.
[9] In reaching this conclusion, the Court does note that certain *other* representations made by plaintiff do appear to be delusional. For example, at his deposition, plaintiff testified that he is a renowned author and that one of his books, Crime Wave!: The Robert Paul Taylor Story, won an award for "the best selling book in Texas history" and has been the "number one" book on amazon.com "for twenty-eight months." Rec. Doc. 64-4, pp. 16-17. (The Court notes that, on October 27, 2015, a check of amazon.com revealed that a book by that name does in fact exist, although the author is listed as Jimmy L. Gettings and its "Amazon Best Sellers Rank" was listed as #7,547,966.) Nevertheless, even if, as defendants argue, plaintiff is a troubled man who suffers from mental illness and delusions, it does not necessarily follow that no excessive force was used in this case. Obviously, a mentally ill arrestee is no less likely to be the victim of police brutality than a wholly sane one.

4

defendants have offered competent summary judgment evidence supporting their version, such as their own affidavits and an affidavit from a seemingly impartial third person, the stolen vehicle's owner. However, other competent summary judgment evidence supports plaintiff's version of the events, such as his verified complaint[10] and his deposition testimony. Obviously, "[s]ummary judgment is improper if there is a genuine dispute of material fact such that a reasonable jury could return a verdict for the nonmoving party." Cardenas v. Lee County, Texas, 569 Fed. App'x 252, 255 (5th Cir. 2014).

That result is not changed by the fact that defendants argue that they are protected by qualified immunity. It is true that where, as here, qualified immunity has been asserted, the burden shifts to the plaintiff to rebut that defense. Harris v. Serpas, 745 F.3d 767, 771 (5th Cir. 2014). However, plaintiff has met his burden in this case.

The United States Supreme Court has explained:

> In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry. The first asks whether the facts, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a federal right. When a plaintiff alleges excessive force during an investigation or arrest, the federal right at issue is the Fourth Amendment right against unreasonable seizures. The inquiry into whether this right was violated requires a balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.
> The second prong of the qualified-immunity analysis asks whether the right in question was "clearly established" at the time of the violation. Governmental actors are shielded from liability for civil damages if their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. The salient question is whether the state of the law at the time of an incident provided "fair warning" to the defendants that their alleged conduct was unconstitutional.

---

[10] Factual assertions in a prisoner's verified complaint made under penalty of perjury constitute competent summary judgment evidence. Hart v. Hairston, 343 F.3d 762, 765 (5th Cir. 2003).

> Courts have discretion to decide the order in which to engage these two prongs. *But under either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment.* This is not a rule specific to qualified immunity; it is simply an application of the more general rule that a judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. Summary judgment is appropriate only if "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. Rule Civ. Proc. 56(a). In making that determination, a court must view the evidence in the light most favorable to the opposing party.

Tolan v. Cotton, 134 S. Ct. 1861, 1865-66 (2014) (citations, quotation marks, ellipses, and brackets omitted; emphasis added).

The first prong of the foregoing analysis is clearly met in the instant case. It cannot seriously be questioned that plaintiff's allegations, *taken in the light most favorable to him*, support his claim that the defendants' conduct violated his rights under the Fourth Amendment. Such a violation requires that a plaintiff be able to show "(1) an injury; (2) which resulted directly from a use of force that was clearly excessive to the need; and (3) the force used was objectively unreasonable." Luna v. Mullenix, 773 F.3d 712, 719 (5th Cir. 2014). In this case, plaintiff testified at his deposition that all the named defendants, i.e. Stalbert, Guzman, Swan, and Perez, were involved in the use of force,[11] that he was not resisting in any way whatsoever,[12] and that he sustained numerous injuries in the attack, including a broken arm.[13]

The second prong is likewise met. The right of an arrestee not to be subjected to excessive force has long been clearly established, and the defendants had fair warning that it was

---

[11] For example, plaintiff testified: "I recognized the ones that assaulted me brutally and sadistically. I looked at their name tags and I'll never forget their names. Michael A. Stalbert. Thomas Perez. Leslie Guzman. Patrice Swan." Rec. Doc. 64-4, p. 54.

[12] See, e.g., Rec. Doc. 64-4, pp. 59-62.

[13] See, e.g., Rec. Doc. 64-4, pp. 63 and 67.

unconstitutional to savagely beat an unresisting suspect.  See Brown v. Lynch, 524 Fed. App'x 69, 9 & n.49 (5th Cir. 2013).

This, of course, is not to say that plaintiff's version of the events is true or that he will be able to prove his claims at trial.  It is to say only that genuine issues of material fact remain in dispute, and, therefore, summary judgment is not appropriate based on the record currently before the Court.

Accordingly,

**IT IS ORDERED** that defendants' "Motion to Dismiss and Motion for Summary Judgment," Rec. Doc. 64, is **DENIED**.

New Orleans, Louisiana, this twenty-third day of November, 2015.

_____
**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**